

FILED

2013 Sep-23  PM 03:18
U.S. DISTRICT COURT
N.D. OF ALABAMA

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
WESTERN DIVISION

| | |
|---|---|
| STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY )<br><br>Plaintiff, )<br><br>vs. )<br><br>DALE CHRISTIAN, DOUGLAS LARKIN, and MISTY LARKIN )<br><br>Defendants. ) | No. 11-cv-03781-LSC |
| THE AUTOMOBILE INSURANCE COMPANY OF HARTFORD, CONNECTICUT )<br><br>Plaintiff, )<br><br>vs. )<br><br>WILLIAM DALE CHRISTIAN, et al. ) | No. 11-cv-04125-LSC |

MEMORANDUM OF OPINION

I. Introduction

This case is a consolidation of two declaratory judgment actions brought by

Plaintiffs The Automobile Insurance Co. of Hartford, Connecticut ("AICH") and

State Farm Mutual Automobile Insurance Co. ("State Farm") against Defendant Dale

Christian. Before the Court is State Farm's Motion for Summary Judgment on its claim that it has no duty to defend or indemnify Defendant Dale Christian ("Christian") in an underlying suit brought by Defendants Douglas and Misty Larkin.[1] (Doc. 42.) Because the Court finds that there was no "accident that involves a vehicle" that would trigger coverage under the insurance policy, the motion for summary judgment is due to be granted.

## II. Facts[2]

On June 22, 2010, Dale Christian and his wife Sheila drove from their business to Northport Electric Supply ("NES"). As was his custom, Christian had a firearm in his vehicle for protection; on that date it was a forty caliber Glock pistol. He had fired roughly thirty rounds with the pistol since purchasing it, and it had been approximately six months since he had fired the weapon.

During the trip to NES, Douglas Larkin ("Larkin") observed Christian driving in a manner he found unacceptable. Larkin pulled alongside Christian, who noticed that Larkin was pointing at him. Christian continued to NES and Larkin followed him.

---

[1] Plaintiff AICH has also filed a motion for Summary Judgment which will be addressed in a separate memorandum of opinion.

[2] The facts set out in this opinion are gleaned from the parties' individual submissions of facts claimed to be undisputed, as well as the Court's own examination of the evidentiary record. All reasonable doubts about the facts have been resolved in favor of the nonmoving party. *See Info. Sys. & Networks Corp. v. City of Atlanta*, 281 F.3d 1220, 1224 (11th Cir. 2002).

Christian and Larkin each parked in the parking lot, and the vehicles they were driving never touched.

After Christian stopped in the NES parking lot, he saw Larkin park behind him and exit his vehicle. Christian opened his door but did not get out. Christian perceived that Larkin was angry and told his wife that Larkin was scaring him. As Larkin approached the vehicle, Christian thought he heard him say the word "kill" while lowering his right hand. (Doc. 56-1 at 10.) Sheila Christian later testified that Larkin actually said "you could have killed my wife and baby." (Doc. 47-5 at 2.)

Christian remained seated in his vehicle, facing forward. He had his pistol between his seat and the center console. It was his practice to keep the safety on when the gun was in his vehicle. When Larkin was approximately three or four feet away from the car door, Christian shot him in the stomach. Christian does not recall reaching for the gun, disengaging the safety, pointing the gun at Larkin, or pulling the trigger. He maintains that he does not remember anything between telling his wife that Larkin was scaring him and hearing the gunshot, after which he was surprised to find that  Larkin had been shot. Christian's wife also did not see her husband get the gun, aim, or fire.

Christian was arrested and eventually pled guilty to Third Degree Assault-Reckless, a crime that requires a *mens rea* of recklessness. (Doc. 44-5); *see also* Ala.

Code § 13A-6-22(2). After the incident, Sheila Christian told law enforcement that her husband acted in self-defense because he believed Larkin had a gun. (Doc. 47-6 at 3.) On September 28, 2010, the Larkins filed suit against Christian in the Circuit Court of Tuscaloosa County, alleging assault and battery, negligence, and wantonness. Christian then made demand on State Farm for defense and indemnity under the provisions of his automobile policy. State Farm is currently defending Christian in the underlying litigation, but it is doing so pursuant to a full reservation of its rights.

The present action was brought under 28 U.S.C. § 2201, the Declaratory Judgment Act, with State Farm requesting that the Court determine and declare its rights and duties under its automobile insurance policy with Christian.  State Farm's policy includes the following liability coverage:

> We will pay:
> a.    damages an insured becomes legally liable to pay because of
>       (1) bodily injury to others; and
>       (2) damage to property
>       caused by an accident that involves a vehicle for which that insured is
>       provided Liability Coverage by this policy;
> b.    attorney fees for attorneys chosen by us to defend an insured who is sued
>       for such damages.

(Doc. 43 at 20 (emphasis original).) State Farm's policy does not define "accident" or "that involves a vehicle."  Nonetheless, State Farm contends that it is entitled to declaratory judgment as a matter of law because the shooting cannot be considered an

" accident that involves a vehicle."

## III. Summary Judgment Standard

Summary judgment is proper " if the pleading, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). The party moving for summary judgment " always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the evidence] which it believes demonstrate the absence of genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The movant can meet this burden by presenting evidence showing that there is no genuine dispute of material fact, or by showing that the nonmoving party has failed to present evidence in support of some element of its case on which it bears the ultimate burden of proof. *Id.* at 322-23. In evaluating the arguments of the movant, the court must view the evidence in the light most favorable to the nonmoving party. *Mize v. Jefferson City Bd. of Educ.*, 93 F.3d 739, 742 (11th Cir. 1996).

Once the movant has met its burden, Rule 56(e) " requires the nonmoving party to go beyond the pleadings and by her own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there

is a genuine issue for trial.' " *Celotex*, 477 U.S. at 324 (quoting Fed. R. Civ. P. 56(e)).

" Where the non-movant presents direct evidence that, if believed by the jury, would be sufficient to win at trial, summary judgment is not appropriate even where the movant presents conflicting evidence. It is not the court's role to weigh conflicting evidence or to make credibility determination . . . ." *Mize*, 93 F.3d at 742. But when the non-movant's evidence cannot stand on its own, summary judgment is appropriate: " A factual dispute is genuine only if a 'reasonable jury could return a verdict for the nonmoving party.' " *Info. Sys. & Networks Corp. v. City of Atlanta*, 281 F.3d 1220, 1224 (11th Cir. 2002) (quoting *United States v. Four Parcels of Real Property*, 941 F.2d 1428, 1437 (11th Cir. 1991)).

## IV. Discussion

State Farm should be granted summary judgment if, as a matter of law, it owes no duty to defend or indemnify Christian in the underlying litigation. Under Alabama law, " [i]t is well settled 'that an insurer's duty to defend is more extensive than its duty to [indemnify].' " *Tanner v. State Farm Fire & Cas. Co.*, 874 So. 2d 1058, 1063-64 (Ala. 2003) (quoting *U.S. Fid. & Guar. Co. v. Armstrong* 479 So. 2d 1164, 1168 (Ala. 1985)). " Where a court determines that an insurer owes no duty to defend its insured in a particular matter, that determination is necessarily dispositive of the narrower duty to indemnify, as well." *Evanston Ins. Co. v. Lett*, 2012 WL 4927958 at *4 (S.D.

Ala., Oct. 15, 2013) (citing *Trailer Bridge, Inc. v. Illinois Nat'l Ins. Co.*, 657 F.3d 1135, 1146 (11th Cir. 2011); *see also Porterfield v. Audubon Indem. Co.*, 856 So. 2d 789, 807 (Ala. 2002) (reaching the issue of the duty to indemnify only on claim where there was a duty to defend). Thus the Court begins with the question of whether State Farm owes a duty to defend. *See Tanner*, 874 So. 2d at 1063.

The insurance policy in question obligates State Farm to defend a suit for personal injury or property damage " caused by an accident that involves a vehicle." The Larkins' underlying complaint in this action asserts claims for personal injury, so the question is whether the underlying events constitute an " accident involving a vehicle." Under Alabama law, a complaint invokes a duty to defend when the facts alleged show an accident or occurrence within the policy's coverage. *See Hartford Cas. Ins. Co. v. Merchs. & Farmers Bank,* 928 So. 2d 1006, 1012 (Ala. 2005). Here, State Farm's duty to defend depends on the facts surrounding the shooting of Larkin by Christian. *See Am. Safety Indem. Co. v. T.H. Taylor, Inc.*, 513 F. App'x. 807, 811 (11th Cir. 2013) (affirming summary judgment where the district court looked at the facts surrounding the underlying incident rather than just the allegations in the complaint). The insured has the burden of establishing that there has been an event triggering

coverage under the insurance policy.[3] *Shane Traylor Cabinetmaker, LLC v. Am. Res. Ins. Co.*, ---- So. 3d —, 2013 WL 1858782 at *6 (Ala. May 3, 2013).

In determining whether the shooting incident was an "accident involving a vehicle," the Court begins by asking whether it was an accident at all. Because the policy itself does not define the term "accident," the definition must be supplied by Alabama case law. *See Perkins v. Hartford Ins. Group*, 932 F.2d 1392, 1395 (11th Cir. 1991) (applying Alabama law to question regarding duty to defend). In interpreting insurance coverage issues, an "accident" has been defined as "an unintended and unforeseen injurious occurrence; something that does not occur in the usual course of events or that could be reasonably anticipated." *Hartford Cas. Ins. Co.*, 928 So. 2d at 1011 (quoting Black's Law Dictionary 15 (7th ed. 1999)); *see also St. Paul Fire & Marine Insurance Co. v. Christiansen Marine, Inc.*, 893 So. 2d 1124, 1136 (Ala. 2004).

The briefs surrounding State Farm's motion for summary judgment focus on the question of whether the shooting involved a vehicle. Though State Farm alleges that the shooting was not an accident, and the Defendants deny the same, neither party fully addresses the issue. However, this issue was central to the summary judgment

---

[3] The burden for establishing that an exclusion applies to a particular occurrence would fall on the insurance company. *See Fleming v. Ala. Farm Bureau Mut. Cas. Ins. Co.*, 310 So. 2d 200, 202 (Ala. 1975). Because the Court holds today that the insured has not established coverage, it need not decide whether an exclusion applies.

motion of the other Plaintiff, AICH, and received full briefing regarding that motion. The Court therefore largely incorporates its analysis from that opinion into the present one. In response to AICH's motion, the Defendants offered the following pieces of evidence to demonstrate that the shooting was accidental: 1) Christian's testimony that he does not recall reaching for the gun or placing a bullet in the chamber; 2) Christian's testimony that the shooting was an accident and that he did not intend to kill or harm Larkin; 3) Christian's testimony that he was inexperienced with the gun; and 4) Sheila Christian's testimony that she believed the shooting to be accidental. In response to State Farm's motion, the Defendants also offer the fact that "Larkin confronted Christian who was fearful and concerned for he and his wife's safety." (Doc. 50 at 10.)

Christian's testimony concerning what he recalls today or intended on the date in question is not admissible to show that the shooting was an accident. Under Rule 602 of the Federal Rules of Evidence, a witness must have personal knowledge of the subject of his testimony. Fed. R. Evid. 602. According to his testimony, Christian does not recall anything that happened from the time he told his wife he was scared to the time he saw that Larkin had been shot. The fact that he does not recall anything in that period, including picking up the gun, chambering the round, and pulling the trigger, does not provide evidence that the shooting was an accident. Christian's lack of

memory is not evidence of either his mental state or the manner in which the shooting occurred. Furthermore, evidence should be excluded if the witness could not have perceived or been aware of the subject of his testimony. *See Pace v. Capobianco*, 283 F. 3d 1275, 1278-79 (11th Cir. 2002) (applying personal knowledge requirement in context of affidavits supporting and opposing summary judgment) ; *Snoznik v. Jeld-Wen, Inc.*, 2010 WL 1924483 at *16 (W.D.N.C. May 12, 2010) ("To have personal knowledge of a matter, a witness must have awareness of the events about which the witness intends to testify").

Because Christian's evidence of his mental state is inadmissible, the only admissible evidence of that state is Christian's guilty plea. Christian pled guilty to Third Degree Assault - Reckless, which means that he admitted that he recklessly caused the physical injuries suffered by Larkin. (Doc. 51 at 3); See Ala. Code § 13A-6-22. Under Alabama law, a conviction or guilty plea is admissible, substantive evidence of the facts underlying the crime. *Durham v. Farabee*, 481 So. 2d 885, 886 (Ala. 1985); *Parris v. Town of Alexander City*, 45 F. Supp. 2d 1295, 1300 (M.D. Ala. 1999). Here the underlying fact evidenced by the guilty plea is Christian's state of mind. Under the Alabama Code, a person acts recklessly "when he is aware of and consciously disregards a substantial and unjustifiable risk that the result will occur." Ala. Code § 13A-2-2(3).

Therefore, when Christian pled guilty, he admitted that he was aware of the risk of injury to Larkin and consciously disregarded such risk when he shot him. As noted above, an "accident" in Alabama law may be defined as "an unintended and unforeseen injurious occurrence; something that does not occur in the usual course of events or that could be reasonably anticipated." *Hartford Cas. Ins. Co.*, 928 So. 2d at 1011. Because Christian, by his own admission, was aware of the risk to Larkin when he shot him, the resulting injury cannot be unforeseen. In such a situation, the injury to that person is "in the usual course of events." *Id.*

Christian next attempts to rely on his testimony that he was inexperienced with the gun, stating that he had fired only two clips (approximately thirty rounds) from it and that it had been six months since he fired it. (Doc. 56-1 at 12.) Yet Christian makes no claim that the gun behaved in some particular way he did not expect, nor does he explain how his inexperience with this weapon could have caused it to go off. Furthermore, he does not remember anything about the way the shooting happened. Christian presents no evidence that the gun misfired or otherwise malfunctioned. He presents no evidence that he did not pull the trigger to fire the weapon in its normal manner. Christian is generally experienced with guns, including pistols and automatics, and he is a frequent hunter. (Doc. 56-1 at 9-10.) If the Glock used to shoot Larkin were somehow different from his other weapons in a way that made it more likely to fire

accidentally, perhaps this would provide significant evidence. Christian offers no evidence of this, however, and his testimony thus provides no support to his claim that the shooting was an accident.

Sheila Christian's testimony that she believes the shooting was an accident cannot be considered by the Court because it is based on her husband's inadmissible testimony concerning his intent. Mrs. Christian stated in her deposition that " I believe now that my husband shot him accidentally . . . and I believe that because he's told me that." (Doc. 47-6 at 6.) She apparently initially believed that the shooting was in self-defense and provided law enforcement officers with a statement to that effect. (*Id.* at 3.) The only reason she provides as to why she changed her mind was that her husband told her the shooting was accidental. (*Id.* at 6.) This statement cannot be admissible because Christian had no personal knowledge of the nature of the shooting or his own intent at the time. Since he cannot testify to these matters, the Court certainly will not permit his wife to repeat his statements. Like her husband, Sheila Christian did not testify to any details about how the shooting happened; she did not see him get his gun or aim, but only heard the gunshot. *Id.* Therefore, her testimony contains no admissible evidence supporting the idea that the shooting was accidental.

The additional evidence offered by Christian in response to State Farm's brief provides no support.  Defendants argue that the fact that Christian feared for the

safety of himself and his wife somehow makes it more likely that the incident was an accident. In reality, the reverse is true. Christian's fear makes it more likely that his wife's initial reading of the situation was correct, and that he believed at the time that he was shooting Larkin in self-defense. The Court does not make such a finding, but it does note that this evidence does not support the Defendants' contentions.

The only admissible evidence put forth by the insured in response to the motion for summary judgment is that Christian cannot remember the events surrounding the shooting and that he had not fired the particular weapon involved very many times. This is insufficient to enable a reasonable juror to find that this shooting was an accident. The undisputed facts provide overwhelming evidence that the shooting was not an accident. First and foremost, Christian pled guilty to a crime requiring recklessness. In addition, Larkin followed Christian into the parking lot of NES at a high rate of speed, parked near him and immediately exited his vehicle. Christian heard the word "kill" as Larkin angrily approached. Both Christian and his wife admitted to being scared and Christian said something to that effect. Whether he remembers it or not, Christian picked up the gun, aimed it at Larkin, and pulled the trigger while Larkin stood three or four feet away. There is no evidence to support a conclusion that the shooting was an accident. No reasonable jury could differ, and therefore no genuine issue of material fact exists as to whether it was an accident.

Because no reasonable jury could find that an accident occurred, the shooting incident could not have been an accident that involved a vehicle. This holding is further buttressed by the fact that the incident did not "involve a vehicle" under Alabama law. The policy terms "involve a vehicle" have not been defined in Alabama case law. Alabama courts have held that insurance policies "shall be construed liberally in favor of the insured and strictly against the insurer." *Allstate Ins. Co. v. Skelton*, 675 So. 2d 377, 379 (Ala. 1996); *Safeway Ins. Co. v. Herrera*, 912 So. 2d 1140, 1143 (Ala. 2005) ("To the extent the language of an insurance policy provision is ambiguous, all ambiguities must be resolved against the insurance company"). Insurers are nonetheless entitled to have the policies enforced as written, and the mere fact that "different parties contend for different constructions" does not render policy language ambiguous. *Woodfall v. Alfa Mut. Ins. Co.*, 658 So. 2d 369 (Ala. 1995). Policy language should be interpreted by applying the standard of the reasonably prudent person applying for insurance. *See, e.g., Porterfield*, 856 So. 2d at 799.

State Farm urges the Court to adopt the meaning of the term "involve" found in the seventh definition listed in Merriam-Webster's Dictionary, "to require as a necessary accompaniment." (Doc. 43 at 14). State Farm then argues that, in the present case, the vehicle was not a necessary accompaniment to the shooting; therefore, the shooting did not involve a vehicle. (*Id.*) Christian does not object to the

definition proposed by State Farm, but insists that the Court broadly define "accompaniment" as "an accompanying situation." (Doc. 50 at 13-14). He then argues that the road rage incident preceding the shooting was an accompanying situation to it, and that the shooting thus involved a vehicle. (*Id.*)

This Court does not intend to define the term "involve a vehicle" for Alabama courts; rather a comparison with how those courts have interpreted similar policy terms guides this Court's inquiry. Several cases construe a policy term providing coverage for accidents "arising out of the ownership, maintenance, or use" of an automobile. *Am. Liberty Ins. Co. v. Soules*, 258 So. 2d 872, 875 (Ala. 1972); *see also U.S. Fidelity and Guar. Co. v. Lehman*, 579 So. 2d 585, 585-86 (Ala. 1990); *Allstate Ins. Co. v. Skelton*, 675 So. 2d 377, 378 (Ala. 1996). Although the terms may not have identical connotations, both carry a causation aspect. The *Soules* court focused on causation in interpreting the "ownership, maintenance, or use" term. 288 So. 2d at 875-76. In this case, the parties agreed on a definition of involve including the words "require" and "necessary." (Doc. 43 at 14; Doc. 50 at 13-14). For the automobile to be required and necessary with respect to the injury, it must have played some role in causing it. Thus, causation lies at the heart of both policy terms, and the logic of Alabama's decisions on one term can and should influence this Court in interpreting the other.

In *Taliaferro v. Progressive Specialty Ins. Co.,* the Alabama Supreme Court

divided numerous cases concerning the "ownership, maintenance or use" term into four categories. 821 So. 2d 976, 978-981 (Ala. 2001). In the first category, exemplified by *Soules*, the vehicle is simply the situs of the accident; the car did not cause the injury. *Id.* at 178(citing *Soules*, 258 So. 2d at 875-76). In these cases, courts have declined to find coverage because "[t]here must be a causal connection between the accident arising out of the use of the automobile before coverage can be successfully invoked." *Soules*, 258 So. 2d at 875-76 (finding no coverage where deputy and his fiancé were in parked car and weapon discharged); *Lehman*, 579 So. 2d at 586 (finding no coverage because "the vehicle itself was merely the location of an attack that could have occurred anywhere.") This category also includes cases of assault in or near a stopped vehicle, including at least one following a road rage type incident. *Allstate Ins. Co. v. Skelton*, 675 So. 2d 377, 382 (Ala. 1996) (finding no coverage for a roadside altercation between occupants of different vehicles). In each of these cases, the criminal act of assault breaks the causal chain and removes the injurious act from the contemplation of a reasonable insurer or insured. *See Taliaferro*, 821 So. 2d at 979.

The second category discussed by the *Taliaferro* court "involves the use of a physical portion of the vehicle as a 'gun rest' for the purpose of firing a weapon." *Id.* (quoting *Quarles v. State Farm Mutual Automobile Insurance Co.*, 533 So. 2d 809, 811 (Fla. App 5th 1988)). Courts have divided in these cases. *Compare Fid. & Cas. Co. of*

*N.Y. v. Lott*, 273 F.2d 500 (5 th Cir. 1960) (use of vehicle as gun rest within coverage) *with Hutchins v. Mills*, 363 So. 2d 818 (Fla. Ct. App. 1978) (use of vehicle as gun rest not a covered use). A third category of cases involves the accidental discharge of weapons in attached gun racks, or while being removed from them; these cases have divided courts as well. *Compare Kohl v. Union Ins. Co.*, 731 P. 2d 134 (Colo. 1986) *with State Farm Mut. Auto Ins. Co. v. Powell*, 227 Va. 492 (1984). The final category, into which *Taliaferro* itself fell, involved the loading or unloading of weapons to or from a vehicle. 821 So. 2d at 980-81 (stating that courts have generally found the loading and unloading process to be covered by the insurance policy).

This case most resembles the first category discussed in *Taliaferro*. No loading or unloading of a weapon from the vehicle was involved, and Christian has introduced no evidence that a portion of the vehicle was used as a gun rest. In describing its previous decisions regarding these "situs" cases, the *Taliaferro* court focused on the issue of causation. 821 So. 2d at 978-79. The policies at issue did not cover these incidents because the injuries in them were not caused by the automobile. *Id.* In *Skelton*, the Court characterized the assault by the side of the road as " an intervening act that broke the causal connection between the use of the Wright automobile and the injury." 675 So. 2d at 380. The court also noted that " A criminal act . . . will break the causal chain because no reasonable standard would suggest that an automobile insurer

intended to insure against such acts." *Id.*

As noted above, Christian has pled guilty to a criminal act. This act intervened to break any causal chain between the automobile and the injury, making Christian's car the mere situs of the incident, under the logic of the "use, maintenance, or ownership" cases. As noted above, causation is also central to determining whether a vehicle is "involved" in an incident. Therefore, the logic behind the situs cases that deal with the "use, maintenance, or ownership" term can be applied with equal force to the present case. That logic dictates that no causation exists between the automobile and Larkin's injuries, and therefore, the injury was not caused by an accident that involves a vehicle.

The Court finds that the shooting of Larkin by Christian was not an accident, and it did not involve a vehicle. Therefore, the shooting cannot trigger State Farm's duty to defend its insured. Since the duty to defend is broader than the duty to indemnify, State Farm also has no duty to indemnify Christian. *See Porterfield*, 856 So. 2d at 807.

V. Conclusion

For the foregoing reasons, summary judgment is due to be granted. A separate Order will be entered.

Done this <u>23rd</u> day of <u>September 2013</u>.

_____

L. SCOTT COOGLER

UNITED STATES DISTRICT JUDGE

174310